**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

-------------------------------------------------------------------------X   Case No.:

CARLINE MAZARD-SAINTILUS, and R.M., a minor, by
and through her parent and natural guardian, Danyeal Kight,

                      Plaintiffs,

        -against-

MIAMI-DADE COUNTY and MIAMI-DADE ECONOMIC
ADVOCACY TRUST*,*

                  Defendants.

-------------------------------------------------------------------------X

**COMPLAINT**

**PLAINTIFFS DEMAND
A TRIAL BY JURY**

     Plaintiffs, CARLINE MAZARD-SAINTILUS (hereinafter "Plaintiff MAZARD-SAINTILUS") and R.M., a minor (hereinafter "Plaintiff R.M."), by and through her parent and natural guardian, Danyeal Kight, by their attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants MIAMI-DADE COUNTY and MIAMI-DADE ECONOMIC ADVOCACY TRUST (together "Defendants"), upon information and belief, as follows:

**NATURE OF THE ACTION**

1.    Plaintiffs complain pursuant to **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e *et. seq*. ("Title VII"), **Section 1983 of the Civil Rights Act of 1871**, 42 U.S.C § 1983 ("Section 1983"), and the **Florida Civil Rights Act of 1992**, (Fla.Stat. § 760.10, *et seq*.) ("FCRA") and seek damages to redress the injuries Plaintiffs have suffered as a result of being **discriminated against, retaliated against and wrongfully terminated** at their place of work. Plaintiff R.M. was subjected to **discrimination and sexual harassment** on the basis of her sex/gender (female). Plaintiff MAZARD-SAINTILUS was

subjected to a **hostile work environment and retaliation** for reporting Plaintiff R.M.'s sexual harassment incident.

## JURISDICTION AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e), *et seq*.

3.     The Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. §1367.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## CONDITIONS PRECEDENT

5.     On October 3, 2019 and October 16, 2019, Plaintiffs MAZARD-SAINTILUS and R.M., respectively, filed timely charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC") and their charges were jointly filed with the Florida Commission on Human Relations ("FCHR").

6.     Plaintiffs received Notices of Right to Sue from the EEOC, dated September 30, 2020, with respect to the charges of discrimination. Copies of the Notices are annexed to this Complaint.

7.     This action is being commenced within 90 days of receipt of the Notices of Right to Sue.

## PARTIES

8.     At all relevant times herein, Plaintiff MAZARD-SAINTILUS was and is a resident of the State of Florida and was and is a "person" and "employee" entitled to protection as defined by the relevant federal and state laws.

9.      At all times relevant, Plaintiff R.M., a minor of the female gender, was and is a resident of the State of Florida and was and is a "person" and an "employee" entitled to protection by the relevant federal and state laws.

10.     Plaintiffs MAZARD-SAINTILUS and R.M. are collectively referred to as "Plaintiffs."

11.     At all relevant times herein, Defendant Miami-Dade County (hereinafter "MDC"), a political subdivision of the State of Florida, provides municipal services and operates the Miami-Dade Economic Advocacy Trust ("the MDEAT"),

12.     At all relevant times herein, Defendant Miami-Dade Economic Advocacy Trust (hereinafter "MDEAT") is a government organization that provides resources to help residents in Miami Dade County.

13.     Defendant Miami-Dade County and Defendant Miami-Dade Economic Advocacy Trust are collectively referred to as "Defendants."

14.     At all times relevant, Defendants employed more than fifteen (15) employees and was Plaintiffs' employer within the meaning of the applicable federal and state laws.

## MATERIAL FACTS

15.     On or about January 22, 2018, Plaintiff MAZARD-SAINTILUS began working for Defendants as a temporary employee in the position of Special Projects Coordinator.

16.     At all times, Plaintiff was a highly proficient employee and performed well in her position/title.

17.     In fact, on or about April 19, 2019, Defendant MDEAT offered Plaintiff a full-time permanent position as a Loan Servicing Manager, earning a salary of approximately $68,000 per year.

18.    In or about June 2017, Plaintiff R.M. began working for Defendants as an intern earning a wage of approximately $9.00 per hour.

19.    At all times, Plaintiffs were above satisfactory employees that performed their duties without any major performance issues.

20.    Starting in August 2019, Plaintiffs were continuously subjected to a hostile work environment stemming from reporting the sexual harassment of Plaintiff R.M.

21.    In or around July 2019, Plaintiff R.M. attended Teen Court Summit, an annual event that all interns of Defendant MDEAT attend.

22.    At the event, Plaintiff R.M. took a picture of herself and other interns and staff in attendance. Plaintiff R.M. was asked by Defendant MDEAT's employee, Rulah Bennett (hereinafter "Bennett") to send him the group picture via text message. Bennett provided his cellphone number, so Plaintiff sent the picture, as requested.

23.    On or about August 17, 2019, Plaintiff R.M. took senior year pictures at her high school. She received proofs of the pictures online, which she took screenshots of to share with relatives.

24.    While sending the pictures to family, Plaintiff R.M. accidentally selected Bennett as a recipient and sent him the pictures in error. Plaintiff R.M. did not realize her mistake until she received a text message response from Bennett complimenting her physical appearance.

25.    Bennett responded, "OMG! you are gorgeous. Damn (red heart emoji)." Plaintiff R.M. was uncomfortable and responded with a thank you. Bennett then continued, "I almost didn't know it was you. I was like shit... I need to hit this up (wink face emoji)." Plaintiff R.M.

did not know how to respond. She was shocked by the comment and extremely uncomfortable.

26.    Bennett then asked Plaintiff R.M. to give him a call.  When Plaintiff R.M. did not call, Bennett called her twice that night. Plaintiff R.M. answered and conferenced in a friend on Bennett's brief calls. During those phone calls, Bennett continued to compliment Plaintiff's body and made it clear he was interested in Plaintiff R.M. romantically. During that same evening, Bennett continued to text Plaintiff R.M. and told her he wished she were there with him (hereinafter the "Sexual Harassment Incident").

27.    Plaintiff R.M. felt threatened and humiliated by Bennett's conduct towards her.

28.    On August 19, 2019, Plaintiff R.M. reported Bennett's sexual harassment to two staff members of Defendant MDEAT, Jefferca Boomery and Plaintiff MAZARD-SAINTILUS.

29.    Plaintiff R.M. indicated that her supervisor was not in so, out of concern and because Bennett was much older than the minor Plaintiff R.M., Plaintiff MAZARD-SAINTILUS decided to report the Sexual Harassment Incident to the Defendant MDEAT's Department Personnel Representative ("DPR").

30.    On August 20, 2019, DPR followed up and requested a statement from Plaintiff MAZARD-SAINTILUS.  DPR also interviewed Plaintiff R.M. and Bennett and obtained statements from each person.

31.    Plaintiff MAZARD-SAINTILUS provided a written statement regarding the Sexual Harassment Incident, as requested.

32.    Immediately following the reporting of Bennett's sexual harassment, Plaintiff MAZARD-SAINTILUS' supervisor, Traci Pollock (hereinafter "Pollock"), began a campaign of

retaliation against Plaintiff MAZARD-SAINTILUS by subjecting her to pervasive disparate treatment and creating a hostile work environment.

33. For example, on August 20, 2019, the same day Plaintiff MAZARD-SAINTILUS reported the Sexual Harassment Incident, Pollock sent her an email informing her that she could no longer attend a housing conference in Orlando that Plaintiff MAZARD-SAINTILUS had been approved to attend.

34. Although Pollock presented other reasons why Plaintiff MAZARD-SAINTILUS could no longer attend the conference, those reasons were pretextual. Given the timing of Pollock's decision to rescind her approval for Plaintiff MAZARD-SAINTILUS to attend the conference, it was due to Plaintiff MAZARD-SAINTILUS reporting the Sexual Harassment Incident.

35. On August 21, 2019, Pollock continued to retaliate against Plaintiff MAZARD-SAINTILUS. Pollock called a meeting and summoned all employees, including staff members from the satellite Miami Gardens office. However, Pollock excluded Plaintiff MAZARD-SAINTILUS.

36. Plaintiff MAZARD-SAINTILUS could hear one of her colleagues express concern that Plaintiff MAZARD-SAINTILUS was not present. However, Pollock discouraged the employee in their efforts to include Plaintiff MAZARD-SAINTILUS.

37. Later on during the meeting, Defendant MDEAT's Executive Director, John Dixon (hereinafter "Dixon"), joined and wondered why Plaintiff MAZARD-SAINTILUS was not present. Dixon extended an invitation to Plaintiff MAZARD-SAINTILUS. However, Pollock attempted to dissuade the invitation by stating that the meeting was wrapping up. Undeterred, Dixon invited Plaintiff MAZARD-SAINTILUS regardless.

38. During the meeting, Plaintiff MAZARD-SAINTILUS listened as Pollock made conspicuous references to "office gossiping" being unacceptable and repeatedly emphasized that all employees needed to address their concerns to their immediate supervisors and no one else. Plaintiff MAZARD-SAINTILUS understood this to be a reference to the Sexual Harassment Incident she had reported.

39. Pollock acted purposefully to isolate and alienate Plaintiff MAZARD-SAINTILUS. Plaintiff MAZARD-SAINTILUS was excluded from the weekly Team Management Meetings held every Tuesday morning and the weekly Housing Division Meetings held every Wednesday afternoon. Plaintiff MAZARD-SAINTILUS attended these meetings with no issues before providing the written statement of the Sexual Harassment Incident on August 20, 2019.

40. Plaintiff MAZARD-SAINTILUS realized that Pollock's attempt to exclude her from these meetings was another attempt to retaliate against her.

41. In addition, Pollock communicated with Plaintiff MAZARD-SAINTILUS aggressively and in an intimidating and threatening manner. Pollock often mentioned Plaintiff MAZARD-SAINTILUS was still in her probationary period to further intimidate Plaintiff MAZARD-SAINTILUS and create a hostile work environment for her.

42. On August 23, 2019, Plaintiff MAZARD-SAINTILUS received an email from Pollock scrutinizing her work and her office interactions. In the email, Pollock created new reporting requirements for Plaintiff MAZARD-SAINTILUS. She asked that Plaintiff MAZARD-SAINTILUS start keeping a list of all her work activities that Plaintiff MAZARD-SAINTILUS would now be required to submit to her each week.

43.    This was an effort to make Plaintiff MAZARD-SAINTILUS' job more burdensome and difficult. Thereby rendering the work environment even more hostile.

44.    On or about August 27, 2019, following her doctor's recommendation, Plaintiff MAZARD-SAINTILUS took a leave of absence until September 3, 2019, as her work environment began to wear on her mental health and caused her severe stress and anxiety.

45.    On September 12, 2019, a visit to Bayview Loan Servicing to look at the company's technology and operations was scheduled. Plaintiff MAZARD-SAINTILUS presence was specifically requested, but Pollock denied the request.

46.    On September 16, 2019, as an intimidation tactic, Pollock sent Plaintiff MAZARD-SAINTILUS an aggressive email quoting Defendant MDEAT's employee rules. In the email, Pollock accused Plaintiff MAZARD-SAINTILUS of attempting to sway public opinion about her management decisions. Plaintiff MAZARD-SAINTILUS was taken aback and decided it was time to take action.

47.    Pollock's conduct had the purpose or effect of unreasonably and unfairly interfering with Plaintiff MAZARD-SAINTILUS' work performance by creating an intimidating, hostile, or offensive working environment in retaliation for reporting the Sexual Harassment Incident.

48.    The same day, Plaintiff MAZARD-SAINTILUS reached out to Defendant MDEAT'S DPR representative, Clevell Brown-Jennings (hereinafter "Brown-Jennings") and complained about the disparate treatment and hostile work environment. Plaintiff MAZARD-SAINTILUS reported that Pollock had consistently made efforts to harass, intimidate and isolate her in retaliation for reporting another employee's sexual

harassment. As a result, Plaintiff MAZARD-SAINTILUS has been seeking therapy for her anxiety and depression.

49.     Brown-Jennings offered to arrange a meeting between Plaintiff MAZARD-SAINTILUS, a representative of DPR, Dixon, and Pollock. Plaintiff MAZARD-SAINTILUS expressed her preference to have an initial meeting without Pollock to discuss her concerns, then have a subsequent meeting to include Pollock. Plaintiff MAZARD-SAINTILUS expressed that this was due to her fear of further abuse and retaliation from Pollock. Brown-Jennings acknowledged Plaintiff MAZARD-SAINTILUS concerns and said she would look into Dixon's availability.

50.     The same day, Plaintiff MAZARD-SAINTILUS received a hostile email from Pollock. In the email, Pollock accused Plaintiff MAZARD-SAINTILUS of adding Pollock's name to documents without her consent. Plaintiff MAZARD-SAINTILUS clarified that the documents, in fact, were pre-drafted by someone other than Plaintiff MAZARD-SAINTILUS and had already included Pollock's name. Prior to then, this had never been an issue. This disparate treatment further evidences the retaliation Plaintiff MAZARD-SAINTILUS suffered at the hands of Pollock.

51.     On September 18, 2019, after she had not heard from Brown-Jennings, Plaintiff MAZARD-SAINTILUS reached out to her to inquire about the status of the meeting with Dixon to discuss Plaintiff MAZARD-SAINTILUS' retaliation and hostile work environment claims.

52.     On September 19, 2019, Brown-Jennings, contacted Plaintiff MAZARD-SAINTILUS to inform her that a meeting with Dixon would be scheduled for the following week.

53. On September 19, 2019, Plaintiff MAZARD-SAINTILUS filed a complaint against Pollock with the Miami-Dade County Human Rights and Fair Employment Practice Division.

54. On September 25, 2019, Defendant MDEAT notified Plaintiff R.M. that her last day of employment would be September 27, 2019. Plaintiff R.M. inquired as to the reasons for her termination and she was told that there were budgetary cuts that resulted in layoffs.

55. On September 27, 2019, Defendant MDEAT terminated Plaintiff MAZARD-SAINTILUS' employment.

56. The above are examples of the acts of retaliation and hostile work environment that Plaintiff MAZARD-SAINTILUS was subjected to regularly after reporting the Sexual Harassment Incident involving Plaintiff R.M.

57. While Plaintiff MAZARD-SAINTILUS was experiencing unfair backlash and retaliation, Plaintiff R.M. experienced retaliation of her own.

58. Defendant MDEAT's reason for Plaintiff R.M.'s termination was pretextual. Plaintiff R.M.'s termination was due to discrimination and retaliation based on her engaging in protected activity by reporting sexual harassment.

59. Plaintiffs have suffered tremendously and continue to suffer as a result of Defendant subjecting them to harassment, a hostile work environment, and adverse employment actions. These unlawful employment practices have caused Plaintiffs serious emotional distress. Additionally, Plaintiffs feel humiliated.

60. The discrimination and retaliatory actions of their supervisors left Plaintiffs feeling targeted, alone and unsupported at their place of work.

61.    Upon information and belief, Defendants are aware of their obligations under Title VII and FCRA.

62.    Defendants knew or should have known of the discriminatory conduct of its employees against Plaintiffs and failed to take corrective measures within its control.

63.    Defendants failed to take seriously Plaintiffs' allegations concerning the hostile environment and discriminatory treatment they suffered.

64.    As a result of Defendants' actions, Plaintiffs felt and continue to feel extremely humiliated, offended, disturbed, degraded, victimized, embarrassed, and emotionally distressed by the blatantly unlawful, discriminatory, and retaliatory conduct.

65.    As a result of the acts and conduct complained of herein, Plaintiffs have suffered emotional distress, future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, injury to reputation, and other non-pecuniary losses.

66.    Defendants' actions and conduct were intentional and intended to harm Plaintiffs.

67.    Defendants' conduct was malicious, willful, outrageous, and/or reckless and conducted with full knowledge of the law.

68.    As a result of the above, Plaintiffs demand Punitive Damages as against Defendants.

**AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION
UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

69.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint.

70.    Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1) provides, in pertinent part, that:

> It shall be an unlawful employment practice for an employer to …
> discharge any individual, or otherwise to discriminate against any
> individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national origin.

71.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq*., by discriminating against Plaintiff R.M.

72.    When Plaintiff R.M. complained to Defendant MDEAT, Plaintiff R.M.'s environment became more hostile.

73.    Plaintiff R.M. was victimized, discriminated against, harassed and subjected to a hostile work environment and/or workplace that was permeated with humiliation, abuse, retaliation, and adverse employment actions.

74.    As a result of the acts and conduct complained of herein, Plaintiff R.M. has suffered a loss of income, loss of employment, the loss of a salary/pay, special damages, loss of benefits, loss of fringe benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, wrongful exclusion, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

75.    Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

76.    Plaintiff R.M. is entitled to the maximum amount allowed under this statute/law.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII

77.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint.

78.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> to discriminate against any of his employees . . . because [s]he
> has opposed any practice made an unlawful employment
> practice by this subchapter, or because [s]he has made a charge,
> testified, assisted or participated in any manner in an
> investigation, proceeding, or hearing under this subchapter.

79.    Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiffs

and terminating Plaintiffs' employment because of Plaintiffs' opposition to unlawful

employment practices.

80.    Plaintiffs were retaliated against by Defendants for engaging in protected activity.

81.    Following Plaintiffs' complaints, Plaintiffs were subjected to a hostile environment

permeated with adverse employment actions, and other retaliatory behavior.

82.    As such, Plaintiffs have been damaged as set forth herein and are entitled to the maximum

award of damages under this law.

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
UNDER 42 U.S.C. § 1983**

83.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of

this Complaint.

84.    Defendants failure to effectively manage and control the gender discrimination and

harassment of the Plaintiffs described above constitutes a custom of the Defendants within

the meaning of 42 U.S.C. § 1983.

85.    Defendants' widespread pattern of conduct in response to Plaintiffs and other female staff

members complaints, including its permissive and tolerant attitude, its failure to adequately

train employees to address the behavior, its failure to effectively use and enforce its

disciplinary policy, and its failure to implement or seek to implement additional measures,

is so widespread that it is the functional equivalent of a formal policy.

86.    The above-described custom and policy of the Defendants violated the Plaintiff R.M.'s right to be free from sexual discrimination and harassment under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

87.    As a direct and proximate result of the foregoing custom and policy of the Defendant, the Plaintiff has suffered injury including lost wages and other employment benefits and have suffered emotional distress, humiliation, embarrassment, anguish and loss of enjoyment of life.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE FLORIDA CIVIL RIGHTS ACT OF 1992

88.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint.

89.    Florida Civil Rights Act § 760.10(1) provides that:

> It is an unlawful employment practice for an employer: (a) To discharge or fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

90.    As described above, Defendants discriminated against Plaintiff R.M., in violation of FCRA, by creating a hostile work environment that included the sexual harassment of Plaintiff R.M.

91.    In addition, Defendants discharged Plaintiff R.M. as a result of her complaints of sexual harassment.

92.    As a result of Defendants' unlawful discriminatory conduct in violation of the FCRA, Plaintiff R.M. has suffered and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

93.     As such, Plaintiff R.M. has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

### AS A FIFTH CAUSE OF ACTION FOR RETALIATION<br>UNDER THE FLORIDA CIVIL RIGHTS ACT

94.     Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

95.     Florida Civil Rights Law § 760.10(7) provides:

> It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

96.     Defendants engaged in an unlawful employment practice by discriminating against Plaintiffs because of their opposition to the unlawful employment practices of the Defendants.

97.     As such, Plaintiffs have been damaged as set forth herein and are entitled to the maximum award of damages under this law.

### JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests a judgment against the Defendants individually, jointly and severally:

A.     Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Florida Civil Rights Act of 1992,

Florida Civil Rights Act § 760.10, *et seq.*, in that Defendants <u>discriminated against</u> Plaintiff R.M. on the basis of her sex, and <u>retaliated against</u> Plaintiffs R.M. and MAZARD-SAINTILUS when they complained and reported the sexual harassment of Plaintiff R.M.;

B.  Awarding damages to Plaintiffs for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices and to otherwise make Plaintiffs whole for any losses suffered as a result of such unlawful employment practices;

C.  Awarding Plaintiffs compensatory damages related to injuries suffered as per Plaintiffs' state law claims;

D.  Awarding Plaintiffs compensatory damages for mental, emotional injury, distress, pain and suffering and injury to their reputation in an amount to be proven;

E.  Awarding Plaintiffs punitive damages;

F.  Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.  Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated:  December 28, 2020

Respectfully submitted,

By:      /s/ Wendy Dolce
Wendy Dolce, Esq.
Florida Bar No. 46715
DOLCE LAW PLLC
44 Court Street, Suite 1217
Brooklyn, New York 11201
T: (718) 571-9162
wendy@dolcelaw.com


By:      /s/ Marjorie Mesidor
Marjorie Mesidor, Esq.
Pro Hac Vice Forthcoming
PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC
45 Broadway, Suite 620
New York, New York 10006
T: (212) 248-7431
mmesidor@tpglaws.com

*Attorneys for Plaintiffs*

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Carline Mazard Saintilus** **5245 SW 40 AVENUE** **Dania Beach, FL 33314** | From: | **Miami District Office** **Miami Tower, 100 S E 2nd Street** **Suite 1500** **Miami, FL 33131** |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2019-06725** | **Susan Diaz,** **Investigator** | **(786) 648-5870** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Jacqueline Gabriel for*
_____

**BRADLEY A. ANDERSON,** **Acting District Director**

Enclosures(s)

09/30/2020
_____
*(Date Mailed)*

cc:

| **Respondent Representative** | **Charging Party Representative** |
|---|---|
| **Leona McFarlane** **Assistant County Attorney** **MIAMI-DADE COUNTY ATTORNEY'S OFFICE** **111 N.W. 1st St. Suite 2810** **Miami, FL 33128** | **Marjorie Mesidor, Esq.** **45 Broadway, Suite 620** **New York, NY 10006** |

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS     --     Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION     --     Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Reyniya Meeks**<br>**2140 NW 47th St**<br>**Miami, FL 33142** | From: | **Miami District Office**<br>**Miami Tower, 100 S E 2nd Street**<br>**Suite 1500**<br>**Miami, FL 33131** |
|-----|---|---|---|

|  | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |  |  |
|---|---|---|---|
| EEOC Charge No. | | EEOC Representative | Telephone No. |
| **510-2020-00282** | | **Susan Diaz,**<br>**Investigator** | **(786) 648-5870** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Jacqueline Gabriel for*

09/30/2020

Enclosures(s)

**BRADLEY A. ANDERSON,**
**Acting District Director**

*(Date Mailed)*

cc:

| **Respondent Representative** | **Charging Party Representative** |
|---|---|
| **Leona McFarlane**<br>**Assistant County Attorney**<br>**MIAMI-DADE COUNTY ATTORNEY'S OFFICE**<br>**111 N.W. 1st St. Suite 2810**<br>**Miami, FL 33128** | **Marjorie Mesidor, Esq.**<br>**45 Broadway, Suite 620**<br>**New York, NY 10006** |

Case 1:20-cv-25270-XXXX   Document 1   Entered on FLSD Docket 12/28/2020   Page 21 of 21

Case 1:20-cv-25270-XXXX   Document 1   Entered on FLSD Docket 12/28/2020   Page 21 of 21
Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --  Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS  --  Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION  --  Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE  --  All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*