**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-CV-25270-HUCK/Becerra**

--------------------------------------------------------X

**R.M.,**

        **Plaintiff,**

**-against-**

**MIAMI-DADE COUNTY,**

        **Defendant.**
--------------------------------------------------------X

## <u>PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AND PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS</u>

Plaintiff, R.M., by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1, files Plaintiff's Response to Defendant's Statement of Material Facts [ECF 35] and Plaintiff's Statement of Additional Material Facts, and states as follows:

### <u>Plaintiff's Response to Defendant's Statement of Material Facts</u>

1. Partially disputed. When Plaintiff was terminated, she was earning $9.00 per hour, but according to a handbook on summer interns, the applicable rate of pay was $10.00 per hour. [ECF 35-2, p. 82:3-24].

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Undisputed.

1

7. Undisputed that Plaintiff worked at the front desk as a receptionist in the summer of 2019.

8. Undisputed.

9. Undisputed that Plaintiff's work hours varied, but she worked four or five days per week. [ECF 35-1 p. 17:16-24].

10. Undisputed that Plaintiff's work days varied but she worked four or five days per week. See Response to No. 9.

11. Undisputed.

12. Undisputed.

13. Partially disputed. Bennett was the unintended recipient of Plaintiff's accidental forwarding of photographs to him. [ECF 35-1 p. 34:8-25].

14. Partially Disputed. Bennett was a seasonal employee of MDEAT. [Pollock Dep. p. 28:13-17; p. 33:15-16].

15. Undisputed.

16. Undisputed.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Undisputed.

21. Undisputed.

22. Undisputed.

23. Undisputed.

24. Partially disputed. Plaintiff also told Bromery about Bennett's phone calls and that he had made her feel uncomfortable. [ECF No. 35-1 p. 52:4-13].

25. Undisputed.

26. Undisputed.

27. Undisputed.

28. Undisputed.

29. Undisputed.

30. Undisputed.

31. Undisputed that Bennett was not at the MDEAT offices following Plaintiff's meeting with Dixon, Pollock and Brown-Jennings. Bennett was at work on August 20, 2019 following the August 17, 2019 incident. [ECF No. 35-1 p.51:13-18].

32. Undisputed.

33. Undisputed.

34. Undisputed.

35. Disputed. Inconsistently with Defendant's explanation for R.M.'s termination, R.M. was advised that her job was eliminated due to a purported lack of funding for interns. [ECF 35-1 p. 29:21-25; p. 30:1-4] Brown-Jennings testified that Pollock terminated R.M. for budgetary reasons. See Plaintiff's Counterstatement of Material Facts Not in Dispute at 48 and 49, with related references. Shortly prior to Plaintiff's termination, new interns were hired to work at MDEAT. In addition, other interns who worked at the same time as Plaintiff retained their positions after Plaintiff was terminated. [ECF 35-1 p. 60:13-25; p. 61:8-25; p. 62:1-4; 9-15].

36. Disputed. The circumstances demonstrate that Plaintiff's termination, occurring one month following her complaint about Bennett [ECF 35-2 p. 55:10-16], was retaliatory and that Defendant's explanation for same was inconsistent and pretextual, in that other interns were hired and/or retained [ECF 35-1 p. 60:14-20; 61:8-12; 62:9-20], and Defendant conceded that a sexual harassment complaint and termination of employment a month later could be considered close in time [ECF 35-2 p. 49:19-25].

37. Disputed. See Response to no. 36.

38. Disputed. Plaintiff participated in a meeting with Dixon and others concerning her complaints about Bennett's conduct three days after the incident involving Bennett. [ECF 35-1 p. 56:2-6].

39. Undisputed.

40. Undisputed.

41. Undisputed.

42. Undisputed.

43. Undisputed.

44. Undisputed.

45. Disputed. According to MDEAT procedures, Plaintiff's complaint should have been referred to the Miami-Dade Office of Fair Employment Practices, or the county attorney. [ECF 35-2 p. 28:7-21].

46. Disputed. See Response to No. 1.

47. Undisputed.

48. Partially disputed. Plaintiff's wish to continue working at MDEAT was hampered by Bennett's conduct towards her and Defendant's reaction to it. [ECF 35-1 p. 33:3-14].

49. Disputed. Plaintiff worked at her college, and has enlisted in the Navy. [ECF 35-1 p. 6:13-16; p. 7: 5-10; p.13:1-12].

50. Undisputed.

51. Undisputed.

52. Undisputed.

53. Undisputed.

### Plaintiff's Statement of Additional Material Facts

54. R.M. was employed at MDEAT as an intern, from June of 2016, when she was 14 years old, until September 27, 2019. [ECF No. 16 paras. 11, 24].

55. R.M. had participated in a summer program operated by MDEAT in July, 2019 where, at the request of Rulah Bennett ("Bennett"), an adult seasonal employee of MDEAT, she sent Bennett a copy of a group photo that had been taken of participants in the program. [Exhibit A, Pollock Dep. p. 28:13-17; p. 33:15-16; ECF No. 35-1 p. 33:15-25; p. 34:1-6]

56. Later that summer, in August of 2019, R.M. accidentally forwarded other photos of herself and other members of her senior high school class to Bennett. [ECF No. 35-1 p. 34:8-25].

57. Bennett responded to receipt of those photos, texting remarks to R.M. telling her, among other things, that she was "gorgeous." [ECF No. 35-1 p. 34:24-25].

58. Later, on August 17, 2019, Bennett telephoned R.M. three times, attempting to converse with her about the photos, and making remarks about her appearance and other sexually based comments. [ECF 35-1 p. 36:15-25; p. 37:1-25; p. 39:4-10; p. 51: 1-7].

59. Following R.M.'s mistaken forwarding of the photos, she noticed Bennett smirking and leering at her in the office [ECF 35-1 p. 43:2-11].

60. R.M. felt uncomfortable with Bennett's actions towards her. [Exhibit B, Bromery Dep. p. 17:5-11].

61. R.M. reported Bennett's remarks and behavior to another MDEAT employee, Jeffreca Bromery ("Bromery"), who told R.M. that she (Bromery) was going to report R.M.'s concerns and R.M. agreed that she should do so. [ECF 35-1 p. 52:1-13; p. 53:3-11; p. 54: 4-20].

62. Bennett's behavior fell under examples of harassing behavior and prohibited conduct under Defendant's policies. [ECF No. 35-2 p.45:3-8].

63. R.M. told Bromery that Bennett had sent her texts saying, "you're so beautiful" and "you're so sexy." [Exhibit B, Bromery Dep. p. 17:13-23].

64. Bromery reported R.M.'s complaints about Bennett to MDEAT officials, including supervisor Carlene Mazard-Saintilus. [ECF 35-1 p. 18:12-15; Exhibit B, Bromery Dep. p. 19:8-25].

65. Bromery also reported R.M.'s complaints about Bennett to Clevell Brown-Jennings ("Brown-Jennings"). [Exhibit B, Bromery Dep. p. 20:11-21].

66. Brown-Jennings received a telephone call from Mazard-Saintilus concerning a possible sexual harassment complaint involving R.M. and Bennett. [Exhibit C, Brown-Jennings Dep. p. 45:1-25].

67. Mazard-Saintilus shared with Brown-Jennings that R.M. had had phone conversations with Bennett. [Exhibit C, Brown-Jennings Dep. p. 43: 9-15].

68. Mazard-Saintilus told Brown-Jennings that the conversation was inappropriate. [Exhibit C, Brown-Jennings Dep. p. 44:1-5].

69. Traci Pollock ("Pollock") was the special projects administrator for MDEAT. [Exhibit A, Pollock Dep. p. 14:8-12].

70. Brown-Jennings called Dixon and Pollock to report what Mazard-Saintilus had told her. Both Dixon and Pollock were upset by what Brown-Jennings had told them. [Exhibit C, Brown-Jennings Dep. p. 45:1-25; p. 68:24-25; p. 69:1-23].

71. Brown-Jennings participated in a meeting with Dixon and Pollock to discuss how the situation would be handled. The three discussed the situation with labor relations and were advised that Bennett would need to be terminated. [Exhibit C, Brown-Jennings Dep. p. 68:24-25; p. 69:1-23].

72. Pollock became aware of a sexual harassment complaint by R.M. against Bennett after this August 20, 2019 meeting. [Ex. A, Pollock Dep. p.40:1-10].

73. Bennett was terminated, effective immediately. [Exhibit C, Brown-Jennings Dep. p. 70:11-14].

74. Bennett's termination occurred after a meeting in which he was informed that Dixon, Brown-Jennings and Pollock had been told that Bennett had had inappropriate contact with a student worker. Bennett expressed that he was sorry and acknowledged it should not have happened and that he was wrong. [Exhibit C, Brown-Jennings Dep. p.73:6-25; p. 74:1-25].

75. Bennett disclosed texts that he had sent to R.M.; Brown-Jennings thought this was an inappropriate exchange. [Exhibit C, Brown-Jennings Dep. p. 74:24-25; p. 75:1-15].

76. Dixon was appalled by the text messages, as was Pollock. [Exhibit C, Brown-Jennings Dep. p. 76:9-15].

77. R.M. spoke separately with Mazard-Saintilus and Brown-Jennings, about her complaints regarding Bennett. [ECF No. 35-1 p. 53:3-25; p 54:1-7; p. 55:12-25].

78. Three days later, on August 20, 2019, R.M. participated in a meeting about Bennett's conduct with Executive Director Dixon, Pollock, and Brown-Jennings. [ECF No. 35-2 p. 92:10-12; ECF Doc. 36, p. 4 (citing ECF No. 35, paras. 11, 24, 26-28)].

79. John Dixon ("Dixon"), in his position as Executive Director of MDEAT would consult about discrimination, harassment and retaliation complaints with either the Miami-Dade County Fair Employment Office or the county attorney. [ECF 35-2 p. 28:7-21].

80. The Executive Director of MDEAT is considered a County supervisor. [ECF 35-2 p. 65:5-7].

81. Investigations of harassment, retaliation or discrimination would be through the Miami-Dade Office of Fair Employment Practices. [ECF 35-2 p. 23:20—25].

82. If MDEAT employees experience discrimination, harassment or retaliation, such issues are referred to a Departmental Personnel Representative ("DPR") who serves as a liaison to the County's Human Resources Department. [ECF No. 35-2 p. 22:9-17].

83. At relevant times, the DPR was Clevell Brown-Jennings ("Brown-Jennings"). [ECF No. 35-2 p. 23:6-11].

84. Complaints received by the DPR would be referred to Dixon as the Executive Director. [ECF No. 35-2 p. 25:3-11].

85. Miami-Dade County maintained several written policies applicable to MDEAT employees, including but not limited to a Human Rights and Fair Employment Practice Procedure, issued by the County. [ECF 35-2 p. 34:20-22].

86. Miami-Dade County also maintained a "Filing Discrimination Complaint" Document, which contained a provision instructing employees who felt they were subjected to retaliation to contact the County's Office of Human Rights and Fair Employment Office. [ECF 35-2 p. 38:2; p. 40:1-4].

87. Miami-Dade County also maintained a document entitled "How to File a Complaint of Job Discrimination/Diversity Matters at Miami-Dade County" which addressed and defined retaliation [ECF 35-2 p. 46:14-20; p. 49:3-18].

88. Miami-Dade County also maintained a County Administrative Order 7-6, entitled "Personnel Policy on Equal Employment Opportunity, which imposed various obligations on County employees including those at MDEAT. [ECF 35-2 p. 53:11-25; p. 54: 1-21].

89. Miami-Dade County also had an Administrative Order prohibiting adverse treatment of employees who reported harassment, which defined harassment to include various conduct including but not limited to adverse employment actions such as termination. [ECF 35-2 p. 61: 19-24; p.62:4-24].

90. R.M. was sent home for the day immediately following the August 20, 2019 meeting with Dixon, Brown-Jennings- and Pollock; it was not the practice to send an employee home who complained of harassment. [ECF 35-2 p. 92:10-16].

91. Miami-Dade County had a policy, entitled "How to File a Complaint of Job Discrimination/Diversity Matters at Miami-Dade County" which was applicable to MDEAT employees. [ECF 35-2 p. 46:14-25, p. 47:1-7].

92. The policy entitled "How to File a Complaint of Job Discrimination/Diversity Matters at Miami-Dade County" addressed, among other things, adverse action, including

termination of employment within its definitions of adverse action. [ECF 35-2 p. 48:22-25; p.49:1-2].

93. The policy entitled "How to File a Complaint of Job Discrimination/Diversity Matters at Miami-Dade County" also addressed retaliation and the evidence necessary to prove it, including evidence that the adverse action was taken because of protected activity such as by showing the protected activity and adverse action occurred close in time and/or that other employees who did not engage in protected activity received more favorable treatment. [ECF No. 35-2 p. 49:6-18].

94. Employees hired at the same time, or later than a complainant who did not complain but were retained or kept their employment while the complainant was terminated would have received more favorable treatment than the complainant. [ECF 35-2 p. 50:13-19].

95. A report of sexual harassment on August 20, 2019, and a termination of employment on September 27, 2019 could be considered close in time. [ECF No. 35-2 p. 49:19-25].

96. R.M.'s last day of work at MDEAT was September 20, 2019, one month following the August 20, 2019 meeting with Dixon, Pollock, and Brown-Jennings. [ECF 35-2 p. 83:18-25; p. 91:2-25; p. 92:1-4; p. 95:19-25; p. 96:1-6].

97. R.M.'s was (officially) terminated effective September 27, 2019. [ECF No. 35-2 p.79:11-12].

98. Dixon, Pollock, and Brown-Jennings were involved in making the decision to end Plaintiff's employment with Defendant. [Ex. D, Pages 5-6, Defendant's Response to Interrogatory No. 15].

99. R.M. was told that she was terminated because of a lack of funding for her position. [ECF No. 35-1 p. 29:21-25; p. 30: 1-2].

10

100.     Brown-Jennings testified that R.M. was terminated because of a lack of funding for her position. [Exhibit C, Brown-Jennings Dep. p. 82:22-25; p. 83:1-10].

101.     Dixon testified that R.M. was terminated because of a lack of work for her to do. [ECF No. 35-2 p. 55:10-16].

102.     Dixon testified that R.M.'s termination was his decision, and that he made this decision based on a subordinate's assessment of how much work was available for R.M. to do. [ECF No. 35-2 p. 98:12-23].

103.     Brown-Jennings testified that Pollock made the decision to terminate R.M. because of the budget. [Brown-Jennings Dep. p. 89:1-12].

104.     Termination was an adverse action under applicable Miami-Dade County discrimination/diversity policies. [ECF Doc. 35-2 p.48: 19-25, p. 49:1-2].

105.     Pollock testified that she was not part of the discussion regarding R.M.'s termination and that she did not know why R.M. was terminated. [Exhibit A, Pollock Dep. p. 18:1-8].

106.     Brown-Jennings could not recall whether there were any interns working before the end of the fiscal year who remained after the start of the new fiscal year, but testified that there were "a couple of" interns at MDEAT (after the start of the fiscal year), but she did not know how they fit as far as the budget. [Exhibit C, Brown-Jennings Dep. p. 87:15-25; p. 88:1-9].

107.     Two weeks prior to R.M.'s termination, two other interns were hired, and others retained their positions following R.M.'s termination. [ECF No. 35-1 p. 60:14-20, p. 61:8-12; p. 62:9-20].

108.     R.M. was a high school student, having graduated in the year 2020. [ECF No. 35-1 p. 7:18-22].

109.     Between the fall of 2020 and May of 2021, R.M. attended college, where she was employed in the University cafeteria earning minimum wage. [ECF No. 35-1 p. 6: 13-16; p.13:1-12].

Dated:  November 23, 2021

Respectfully submitted,
By: /s/ Wendy Dolce
Wendy Dolce, Esq.
Florida Bar No. 46715
DOLCE LAW PLLC
44 Court Street, Suite 1217
Brooklyn, New York 11201
T: (718) 571-9162
wendy@dolcelaw.com

By: /s/ Marjorie Mesidor
Marjorie Mesidor, Esq.
Pro Hac Vice
PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (212) 248-7431
mmesidor@tpglaws.com

## <u>CERTIFICATE OF SERVICE</u>

**I hereby certify** that on November 23, 2021 a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

s/ Wendy Dolce        <br>
Counsel for Plaintiff

## <u>SERVICE LIST</u>

**Counsel for Defendant**
Leona N. McFarlane
Leona.McFarlane@miamidade.gov
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5067